**INDUSTRIA DE FUNDICAO TUPY;**
American Iron & Alloys
Corporation, Plaintiffs,

v.

**Ronald BROWN, Secretary of Commerce; United States Department of Commerce; the United States, Defendants,**

**Grinnell Corporation, Ward Manufacturing, Inc. and Stockham Valves & Fittings Co., Inc., Defendants–Intervenors.**

Court No. 94–09–00528.
Slip Op. No. 94–156.

United States Court of
International Trade.

Oct. 6, 1994.

---

Sonnenberg, Anderson & Rodriguez, Philip Yale Simons; (Jerry P. Wiskin, Steven P. Sonnenberg and Jacqueline M. Paez, of counsel, Chicago, IL, for plaintiffs.

Frank W. Hunger, Asst. Atty. Gen.; David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, A. David Lafer, Sr. Trial Counsel, and Hal S. Shapiro; Michelle K. Behaylo, Atty.–Advisor, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, of counsel, Washington, DC, for defendants.

McKenna & Cuneo, Peter Buck Feller and Lawrence J. Bogard, Washington, DC, for defendants-intervenors.

## OPINION

TSOUCALAS, Judge:

Plaintiffs in this case are Industria de Fundicao Tupy and American Iron & Alloys Corporation (collectively "Tupy"). Industria de Fundicao Tupy is a Brazilian corporation which manufactures malleable cast iron pipe fittings and exports them to the United States through its wholly-owned U.S.-based subsidiary, American Iron & Alloys Corporation. Pursuant to Rule 65 of the Rules of the Court, on September 9, 1994, Tupy applied for a temporary restraining order ("TRO") and a preliminary injunction to enjoin the Department of Commerce, International Trade Administration ("Commerce"), from conducting an administrative review with respect to *Antidumping Duty Order: Malleable Cast Iron Pipe Fittings From Brazil*, 51 Fed.Reg. 18,640 (1986) (the "Order"). Plaintiffs seek this relief during the pendency of their civil action which challenges Commerce's right to conduct an administrative review of the Order for the period May 1, 1993 through April 30, 1994.

On September 9, 1994, Judge Richard W. Goldberg of this court granted plaintiffs' application for a TRO and scheduled a full hearing for September 13, 1994 with respect to plaintiffs' request for a preliminary injunction. This hearing was rescheduled for September 28, 1994, at which time the Court received oral argument in order to determine whether preliminary injunctive relief would be appropriate.

### Background

On March 31, 1986, Commerce determined that Tupy's[1] malleable cast iron pipe fittings from Brazil were being, or were likely to be, sold in the United States at less than fair value. *Antidumping; Malleable Cast Iron Pipe Fittings, Other Than Grooved, From Brazil; Final Determination of Sales at Less Than Fair Value*, 51 Fed.Reg. 10,897 (1986). Subsequently the International Trade Commission found that imports of Tupy's malleable iron pipe fittings were causing material injury to the U.S. industry which produced the like product. *Certain Cast–Iron Pipe Fittings From Brazil, Korea, and Taiwan*, 51 Fed.Reg. 18,670 (1986). On May 21, 1986, Commerce issued the antidumping duty order with respect to imports of malleable iron pipe fittings from Brazil. 51 Fed.Reg. 18,640.

Commerce did not conduct administrative reviews of the Order in 1987 and 1988.

On May 3, 1989, during the third annual anniversary month[2] of the Order, Commerce solicited requests for an administrative review of the Order. *Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Administrative Review*, 54 Fed.Reg. 18,918 (1989). The domestic industry did not request an administrative review.

On May 8, 1990, during the fourth annual anniversary month of the Order, Commerce again solicited requests for administrative review. *Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Administrative Review*, 55 Fed.Reg. 19,093 (1990). Again, no requests for a review ensued.

On May 2, 1991, during the fifth annual anniversary month of the Order, Commerce published a notice of intent to revoke the Order. *Malleable Cast–Iron Pipe Fittings From Brazil, Intent to Revoke Antidumping Order*, 56 Fed.Reg. 20,193 (1991). On May 30, 1991, the Cast Iron Pipe Fittings Committee, the petitioner in the original investigation, objected to the proposed revocation. Consequently, on June 26, 1991, Commerce determined not to revoke the Order. *Malleable Cast Iron Pipe Fittings From Brazil; Determination Not to Revoke Antidumping Duty Order*, 56 Fed.Reg. 29,220 (1991). Plaintiffs did not appeal Commerce's determination.

In 1992, "[d]ue to an administrative oversight," Commerce inadvertently failed to

---

1. During the time of the original investigation, Tupy was known as Fundicao Tupy, S.A.

2. The term, "anniversary month," refers to the anniversary month of the publication of an antidumping duty order, *i.e.*, "the calendar month in which the anniversary of the date of publication of the order or finding occurs." 19 C.F.R. § 353.22(a) (1991). The anniversary month in the instant case is May.

publish any notice of intent to revoke the Order. *Defendants' Memorandum in Opposition to Plaintiffs' Application for a Preliminary Injunction ("Defendants' Brief")* at 4. The domestic industry did not request an administrative review or question Commerce's failure to publish a notice of intent to revoke. Plaintiffs did not object to Commerce's failure to revoke the Order.

In May 1993, Commerce failed to publish a notice of intent to revoke; it published the notice on June 21, 1993. *Malleable Cast Iron Pipe Fittings From Brazil; Intent to Revoke Antidumping Duty Order*, 58 Fed. Reg. 33,796 (1993). On July 21, 1993, Grinnell Corporation ("Grinnell"), Stockham Valves & Fittings Co., Inc. ("Stockham"), Stanley G. Flagg & Company, Inc., and Ward Manufacturing, Inc. ("Ward") objected to the proposed revocation. Consequently, on September 30, 1993, Commerce published a notice of determination not to revoke the Order. *Malleable Cast Iron Pipe Fittings From Brazil; Determination Not to Revoke Antidumping Duty Order ("Determination Not to Revoke Order")*, 58 Fed.Reg. 51,057 (1993). Plaintiffs did not appeal Commerce's determination.

In 1994, on May 3rd, Commerce published a notice communicating an intent to revoke the Order if interested parties did not request an administrative review or object to the proposed revocation by May 31, 1994. *Intent to Revoke Antidumping Duty Orders and Findings*, 59 Fed.Reg. 22,821 (1994). The following day, on May 4th, Grinnell, Ward and Stockham requested an administrative review pursuant to 19 U.S.C. § 1675(a) (1988). *Defendants' Brief* at 5. On July 15, 1994, indicating that it had inadvertently omitted listing the Order in its previous initiation notice, Commerce listed the Order among various antidumping duty orders and findings with June anniversary dates for which timely requests for administrative reviews had been made. By such notice, Commerce announced initiation of an administrative review of the Order for the period May 1, 1993 through April 30, 1994. *Initiation of Antidumping Duty Administrative Reviews and Requests for Revocation in Part*, 59 Fed.Reg. 36,160 (1994).

On July 22, 1994, for the purpose of conducting an administrative review of the Order, Commerce issued a questionnaire to Industria de Fundicao Tupy. The response date was September 20, 1994, day 60 of the annual review.

By letter dated August 8, 1994, Industria de Fundicao Tupy requested that Commerce immediately revoke the finding of dumping against malleable cast iron pipe fittings from Brazil. It based its request on the Court's decision in *Kemira Fibres Oy v. United States ("Kemira I")*, 18 CIT ——, 858 F.Supp. 229 (1994).

Defendant-intervenors Grinnell, Ward and Stockham, domestic manufacturers of malleable iron pipe fittings, oppose plaintiffs' motion for injunctive relief. These interested parties were members of the industry group that petitioned for the investigation which resulted in issuance of the Order. *Defendant–Intervenors' Memorandum of Law in Opposition to Plaintiffs' Motion for a Preliminary Injunction ("Defendant–Intervenors' Brief")* at 2.

### Discussion

■ In order for a preliminary injunction to issue, plaintiffs must demonstrate: (1) that it has a likelihood of success on the merits; (2) that there is a threat of immediate and irreparable harm to plaintiffs if relief is not granted; (3) that the balance of hardships to the parties favors issuance of the preliminary injunction; and (4) that the public interest would be better served by a grant of the relief requested. *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed.Cir. 1983); *Timken Co. v. United States*, 11 CIT 504, 506, 666 F.Supp. 1558, 1559 (1987). "If any one of the requisite factors has not been established by plaintiffs, the motion for a preliminary injunction must be denied." *Trent Tube Div., Crucible Materials Corp. v. United States*, 14 CIT 587, 588, 744 F.Supp. 1177, 1179 (1990), *citing S.J. Stile Assocs. Ltd. v. Snyder*, 68 CCPA 27, 30, C.A.D. 1261, 646 F.2d 522, 525 (1981); *Budd Co. Wheel and Brake Div. v. United States*, 12 CIT 1020, 1022, 700 F.Supp. 35, 37 (1988).

*Plaintiffs' Likelihood of Success on the Merits*

Before the Court is the Commerce companion regulation to the antidumping laws, 19 C.F.R. § 353.25(d)(4).[3]

Plaintiffs make two distinct arguments based on § 353.25(d)(4) to support their contention that, as a matter of law, Commerce is barred from proceeding with an administrative review of the Order for the period May 1, 1993 through April 30, 1994. First, plaintiffs argue that an administrative review would be illegal in light of Commerce's "repeated violations of Section 353.25(d)(4)(i)." *Memorandum of Law in Support of Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction ("Plaintiffs' Brief")* at 8. Second, plaintiffs argue that an administration review would be unlawful as Commerce is obligated to revoke the outstanding Order pursuant to § 353.25(d)(4)(iii). *Id.* at 10–15.

Specifically, plaintiffs assert that with regard to 1991, instead of publishing a notice of intent to revoke the Order on May 1st as is required by § 353.25(d)(4)(i), Commerce published the notice "a day late in contravention of its regulations" and an interested party responded with an objection on May 30th. *Id.* at 11.

With regard to 1992, plaintiffs claim that Commerce failed to publish a notice of intent to revoke "at any time during the entire calendar year of 1992," thereby contravening § 353.25(d)(4)(i). *Id.* Further, plaintiffs submit that, as the domestic industry failed to request an administrative review or file an objection to revocation, Commerce was obligated to revoke the Order on June 1, 1992 pursuant to § 353.25(d)(4)(iii). *Id.* at 11–12.

With regard to 1993, plaintiffs claim that Commerce's June 21st notice of intent to revoke was invalid because it was published "[s]even weeks after the time provided by its regulation" and the interested parties' July 21st objection to the proposed revocation was likewise invalid. *Id.* at 4. Therefore, Commerce was obligated to revoke the Order on June 1, 1993. *Id.* at 12–13.

With regard to 1994, plaintiffs claim that Commerce's May 3rd notice of intent to revoke was invalid as § 353.25(d)(4)(i) requires a May 1st publication date. *Id.* at 5. Plaintiffs concede that, on May 4th, three interested parties requested an administrative review of the Order. *Id.* However, plaintiffs submit that the Order should have been "revoked over two years earlier." *Id.* at 13.

Plaintiffs contend that, in failing to comply with its regulation and in not revoking the Order, Commerce has acted arbitrarily and capriciously, violating plaintiffs' procedural due process rights. *Id.*

In its opposition to plaintiffs' motion, Commerce essentially makes the arguments that it made in *Kemira I,* 18 CIT at ——, 858 F.Supp. at 232–36, and in *Kemira Fibres Oy v. United States,* 18 CIT ——, 861 F.Supp. 144 (1994) (*"Kemira II"*). In addition, Commerce maintains that plaintiffs' claim is barred by the doctrine of laches. *Defendants' Brief* at 12–16.

---

3. **§ 353.25 Revocation of orders; termination of suspended investigation.**

(d) *Revocation or termination based on changed circumstances....*

(4)(i) *If for four consecutive annual anniversary months* no interested party has requested an administrative review, under § 353.22(a), of an order or suspended investigation, not later than the first day of the fifth consecutive annual anniversary month, the Secretary will publish in the FEDERAL REGISTER notice of "Intent to Revoke Order" or, if appropriate, "Intent to Terminate Suspended Investigation."

(ii) Not later than the date of publication of the notice described in paragraph (d)(4)(i) of this section, the Secretary will serve written notice of the intent to revoke or terminate on each interested party listed on the Department's service list and on any other person which the Secretary has reason to believe is a producer or seller in the United States of the like product.

(iii) *If by the last day of the fifth annual anniversary month* no interested party objects, or requests an administrative review under § 353.22(a), *the Secretary at that time will conclude that the requirements of paragraph (d)(1)(i) for revocation or termination are met, revoke the order* or terminate the suspended investigation, and publish in the FEDERAL REGISTER the notice described in paragraph (d)(3)(vii) of this section.

19 C.F.R. § 353.25(d)(4) (1991) (emphasis added).

■ In *Kemira I,* the Court relied on § 353.25(d)(4) to grant Kemira Fibres Oy ("Kemira") a preliminary injunction enjoining Commerce from conducting an administrative review of an antidumping duty order (also the "Order") with respect to imports of viscose rayon staple fiber from Finland. *Id.* at ——, 858 F.Supp. at 233–36. Plaintiffs propose to the Court that *Kemira I* held that the requirements of paragraphs (i) and (iii) of 19 C.F.R. § 353.25(d)(4) are mandatory. *Plaintiffs' Brief* at 11. However, plaintiffs misinterpret *Kemira I,* to state that, because Commerce failed to publish a notice of intent to revoke by the first day of the Order's anniversary month as is required by § 353.25(d)(4)(i), revocation of the outstanding Order became mandatory.

In *Kemira I,* 18 CIT at ——, 858 F.Supp. at 230, the anniversary month was March. No administrative review had been requested for four consecutive annual anniversary months. In the fifth consecutive annual anniversary month, March 1993, § 353.25(d)(4)(i) required that Commerce publish a notice of intent to revoke the Order. Commerce, however, instead published a notice on March 12, 1993 soliciting requests for an administrative review of the Order. No requests ensued. The Court found that, as of March 31, 1993, no interested party had objected to Commerce's proposed revocation of the Order *or* requested an administrative review as is required by § 353.25(d)(4)(iii), Commerce was obligated to revoke the Order on April 1, 1993. *Kemira I,* 18 CIT at ——, 858 F.Supp. at 234. The Court held that revocation of the Order became mandatory because the regulation imposed an adverse consequence for failure to meet the regulatory deadline. The Court stated, *"the adverse consequence* of no interested party having objected *or* requested an administrative review by the last day of the fifth anniversary month *was that Commerce would revoke the Finding,* therefore, the directive of section 353.25(d)(4)(iii) is mandatory." *Id.* at ——, 858 F.Supp. at 234. The Court granted a preliminary injunction because it concluded that "no administrative review should have been commenced." *Id.* at ——, 858 F.Supp. at 234. Thus, the Court's decision turned on

the requirements of § 353.25(d)(4)(iii), not those of § 353.25(d)(4)(i).

*Kemira II,* 18 CIT at ——, 861 F.Supp. at 144, which decided Kemira's case on the merits, clarified that the Court had not based its decision in *Kemira I* on any failure by Commerce to publish on the first day of the Order's anniversary month a notice of intent to revoke. *Id.* at —— – ——, 861 F.Supp. at 147. In fact, in that case, the Court indicated a willingness to deem a procedural defect in meeting the requirements of paragraph (i) cured if Commerce had published the requisite notice during the Order's fifth anniversary month. *Id.* at ——, 861 F.Supp. at 148. In the instant case, on May 2, 1991 and May 3, 1994, Commerce published notices of intent to revoke the Order. Commerce was late with these publications by one and two days respectively. 19 C.F.R. § 353.25(d)(4)(i). However, Commerce published the requisite notices at a reasonable time during the appropriate anniversary month. The Court has not held that Commerce must strictly adhere to § 353.25(d)(4)(i). Therefore, the Court finds that, with regard to 1991 and 1994, plaintiffs' § 353.25(d)(4)(i) argument is without merit.

Further, with regard to these notices, the assertion or implication that the domestic industry's responses were invalid because the notices were late, is similarly meritless.

On May 30, 1991, the Cast Iron Pipe Fittings Committee objected to Commerce's proposed revocation of the Order. Further, on May 4, 1994, Grinnell, Ward and Stockham requested an administrative review. In both years, the interested parties acted by the last day of the fifth annual anniversary month, thereby meeting the regulatory deadline. 19 C.F.R. § 353.25(d)(4)(iii). Consequently, Commerce was not obligated to revoke the Order. Hence, with regard to 1991 and 1994, plaintiffs' § 353.25(d)(4)(iii) argument fails.

■ In 1992, Commerce concedes that it failed to publish a notice of intent to revoke the Order. Further, the facts show that prior to expiration of the Order's fifth annual anniversary month, no interested party re-

quested an administrative review of the Order or questioned Commerce's failure to publish a notice of intent to revoke. Therefore, pursuant to § 353.25(d)(4)(iii), plaintiffs had a cause of action against Commerce, on June 1, 1992, for failure to revoke the Order. However, plaintiffs are precluded from pursuing the matter because they did not contest Commerce's failure to revoke until September 9, 1994—more than two years after the date that their cause of action first accrued.

■ Plaintiffs' carry the burden of demonstrating that the Court of International Trade has jurisdiction to rule on their claim. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *Smith Corona Group, SCM Corp. v. United States*, 8 CIT 100, 102, 593 F.Supp. 415, 417–18 (1984).

■ Plaintiffs predicate jurisdiction in this action on 28 U.S.C. § 1581(i) (1988).[4] *Plaintiffs' Brief* at 6–8. Section 1581(i), the residual jurisdiction provision, confers exclusive jurisdiction upon the court concerning issues relating to the antidumping duty law which are not specifically covered by other subparagraphs of section 1581. This provision may be invoked as a basis for subject matter jurisdiction where another subsection of § 1581 is unavailable or when the remedy provided by the other subsection would be "manifestly inadequate." *See Kemira I*, 18 CIT at —— – ——, 858 F.Supp. at 232. *See also Asociacion Colombiana de Exportadores de Flores (Asocoflores) v. United States*, 13 CIT 584, 717 F.Supp. 847 (1989), *aff'd*, 903 F.2d 1555 (Fed.Cir.1990); *Miller & Co. v. United States*, 824 F.2d 961, 963 (Fed. Cir.1987), *cert. denied*, 484 U.S. 1041, 108

S.Ct. 773, 98 L.Ed.2d 859 (1988). Plaintiffs claim that jurisdiction pursuant to 28 U.S.C. § 1581(c) (1988) would be manifestly inadequate as, if plaintiffs are required to participate in an administrative review in order to invoke the court's jurisdiction, their challenge with regard to the legality of the review would be moot. *Plaintiffs' Brief* at 8. In support of their claim, plaintiffs cite several cases including, *Kemira I*, 18 CIT at —— – ——, 858 F.Supp. at 232, and *Asocoflores*, 13 CIT at 586–87, 717 F.Supp. at 850.

Although jurisdiction would be proper under 28 U.S.C. § 1581(i) in the context at issue, pursuant to 28 U.S.C. § 2636(h) (1988),[5] any cause of action brought under 28 U.S.C. § 1581(i) must be brought within two years of the date that the cause of action first accrues. Accordingly, plaintiffs' cause of action is no longer judicially cognizable and plaintiffs are without recourse against Commerce with respect to 1992.

■ With regard to 1993, plaintiffs may have had a cause of action against Commerce for failure to revoke the order on June 1, 1993 pursuant to § 353.25(d)(4)(iii). However, Commerce published a notice on September 30, 1993 announcing its determination not to revoke the Order. *Determination Not to Revoke Order*, 58 Fed.Reg. at 51,057. Therefore, in this case, unlike in *Kemira I*, plaintiffs had an agency determination before them that they could appeal.

If plaintiffs were dissatisfied with Commerce's final determination not to revoke the Order, plaintiffs had an adequate remedy under 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a (1988). Pursuant to 28 U.S.C.

---

4. Section 1581(i) states, in part, as follows:

(i) In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)–(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—

(1) revenue from imports or tonnage;

(2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;

(3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or

(4) administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this section.

28 U.S.C. § 1581(i) (1988).

5. § 2636. **Time for commencement of action**

(h) A civil action of which the Court of International Trade has jurisdiction under section 1581 of this title ... is barred unless commenced in accordance with the rules of the court within two years after the cause of action first accrues.

§ 1581(c), this court has jurisdiction over all actions commenced under section 516A of the Tariff Act of 1930. Section 516A of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a provides, in relevant part:

> **§ 1516a.  Judicial review in countervailing duty and antidumping duty proceedings**
>
> **(a)  Review of determination**
>
>  . . . .
>
> **(2)  Review of determinations on record**
>
> **(A)  In general**
>
> *Within thirty days after—*
>
> (i) *the date of publication in the Federal Register of—*
>
> (I) notice of any determination described in *clause* (ii), (*iii*), (iv), or (v) of *subparagraph B,* or
>
> (II) an antidumping or countervailing duty order based upon any determination described in clause (i) of subparagraph (B), or
>
> .    .    .    .    .
>
> an interested party who is a party to the proceeding in connection with which the matter arises may commence an action in the United States Court of International Trade by filing a summons, and within thirty days thereafter a complaint, each with the content and in the form, manner, and style prescribed by the rules of that court, contesting any factual findings or legal conclusions upon which the determination is based.
>
> **(B)  Reviewable determinations**
>
> The determinations which may be contested under subparagraph (A) are as follows:
>
>  . . . .
>
> (iii) A final determination, other than a determination reviewable under paragraph (1), by the administering authority or the Commission under section 1675 of this title.

19 U.S.C. § 1516a (1988) (emphasis added).

Thus, pursuant to 19 U.S.C. § 1516a, plaintiffs had 30 days from the determination's publication date, September 30, 1993, to initiate an action in this court contesting Commerce's decision not to revoke the Order. Plaintiffs failed to initiate any action. Having failed to do so, plaintiffs may not now resort to the residual jurisdiction of this court. Therefore, plaintiffs have no recourse against Commerce with regard to 1993.

This case is distinguishable from *Kemira I* in that, in the case at bar, interested parties objected to Commerce's proposed revocation on at least two occasions and Commerce responded by issuing determinations not to revoke the Order. Hence, plaintiffs had significant opportunity to make their present arguments. If Commerce's determinations not to revoke the Order were objectionable, plaintiffs should have initiated a counter action. *See, e.g., Wear Me Apparel Corp. v. United States,* 1 CIT 60, 1980 WL 2223 (1980) (where plaintiff knew of impending irreparable harm for months, the Court denied the injunction because a plaintiff "who has not acted diligently to pursue its administrative remedies cannot . . . be permitted to benefit by its past inaction in pursuit of the present application"). However, plaintiffs failed to appeal Commerce's actions. Plaintiffs' failure to react maintained the status quo and the Order remained in effect. Further, in this case, unlike in *Kemira I,* the domestic industry's 1994 request for an administrative review of the Order was made at a point in time when the Order was still in effect. Moreover, the request for an administrative review was made in conformity with Commerce's requirements and Commerce properly followed the review initiation process. *See* 19 C.F.R. § 353.22(a); 19 U.S.C. § 1675(a).

By their dilatory actions, plaintiffs have shown that any hardship to them is remote and insignificant.

### Conclusion

In sum, plaintiffs have not convinced the Court to grant the extraordinary relief requested. Plaintiffs' motion for a preliminary injunction is therefore denied and the underlying TRO is dissolved.