**Slip Op. 05-50**

UNITED STATES COURT OF INTERNATIONAL TRADE

---

SAN VICENTE CAMALU SPR DE RI       :
  and EXPO FRESH, LLC,

                                  :

                      *Plaintiffs*,

                                  :        Court No. 03-00517

            v.

                                    :

UNITED STATES,

                      *Defendant.*     :

---

[Motions to dismiss for lack of subject matter jurisdiction granted.]

Decided:  April 18, 2005


Crowell & Moring LLP (Matthew P. Jaffe and Robert A. Lipstein), for Plaintiffs.

Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director, and Jeanne E. Davidson, Deputy Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Paul D. Kovac and Kent G. Huntington); Augusto Guerra, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, Of Counsel; for Defendant U.S. Department of Commerce.

James M. Lyons, General Counsel, U.S. International Trade Commission (Charles A. St. Charles and Michael Diehl), for Defendant U.S. International Trade Commission.


**OPINION**

RIDGWAY, Judge:

Plaintiffs in this action – hereinafter collectively referred to as "SVC" – are San Vicente Camalu SPR de RI ("San Vicente"), a Mexican producer and exporter of fresh tomatoes, and Expo Fresh, LLC ("Expo Fresh"), a U.S. importer of the same. SVC here contests certain determinations made in the course of an antidumping investigation by the U.S. Department of Commerce

("Commerce") and the U.S. International Trade Commission ("ITC").  Specifically, invoking the court's residual  jurisdiction under 28 U.S.C. § 1581(i) (2000),[1] SVC challenges the two agencies' determinations to terminate (or, alternatively, not to reopen) the five year "sunset" review involving fresh tomatoes from Mexico.

Now before the court are parallel motions to dismiss for lack of subject matter jurisdiction filed on behalf of Commerce and the ITC, and opposed by SVC.[2]  As discussed in greater detail below, so-called "(i) jurisdiction" will not lie in this case, because jurisdiction was available under another provision of the statute – specifically, 28 U.S.C. § 1581(c).  SVC failed to meet the statutory deadline for filing its appeal under § 1581(c), however.  The pending motions are therefore granted, and this action is dismissed.

## I. **Background**

The underlying administrative proceedings began some nine years ago, when representatives of the U.S. tomato industry petitioned Commerce and the ITC, alleging that fresh tomatoes from Mexico were being dumped in this country (that is, sold at less than fair value), to the detriment of the domestic industry.[3]  Both agencies launched antidumping investigations, and in due course made

---

[1]All statutory citations herein are to the 2000 edition of the U.S. Code.

[2]*See* Defendant's Motion to Dismiss ("DOJ Brief"); Defendant U.S. International Trade Commission's Motion to Dismiss ("ITC Brief"); San Vicente Camalu and Expo Fresh's Opposition to Defendants' Motions to Dismiss for Lack of Jurisdiction ("SVC Response Brief"); Reply to Plaintiffs' Opposition to Defendants' Motions to Dismiss for Lack of Jurisdiction ("DOJ Reply Brief"); Defendant United States International Trade Commission's Reply to Plaintiff's Response to Defendants' Motions to Dismiss ("ITC Reply Brief").

[3]*See* Fresh Tomatoes from Mexico, 61 Fed. Reg. 15,968 (ITC April 10, 1996) (initiation of antidumping investigation);  Fresh Tomatoes from Mexico, 61 Fed. Reg. 18,377 (Dep't Commerce April 25, 1996) (initiation of antidumping investigation).

affirmative preliminary determinations.[4]  The investigations were suspended in November 1996,

however, when Commerce entered into a suspension agreement with certain Mexican tomato

producers and exporters, who agreed to revise their prices.[5]  The statute authorizes Commerce to

enter into such agreements where, *inter alia*, "exporters of the subject merchandise who account for

*substantially all* of the imports of that merchandise" agree to measures that "eliminate completely

the injurious effect" of the imports.  19 U.S.C. § 1673c(c) (emphasis added).[6]

Fast forward approximately five years, to October 2001.  Commerce and the ITC began their

five-year "sunset" review of the suspended antidumping investigations, to determine whether

dumping (and material injury to domestic producers) would be likely to continue or resume if the

suspended investigation were terminated.[7]   But, in late May 2002, while the agencies' sunset

---

[4]*See* Fresh Tomatoes From Mexico, Inv. No. 731-TA-747, USITC Pub. 2967 (May 16, 1996)
(prelim. affirm. injury determination, finding "reasonable indication" that imports were injuring
domestic industry); Fresh Tomatoes from Mexico, 61 Fed. Reg. 56,608 (Dep't Commerce Nov. 1,
1996) (prelim. affirm. dumping determination, finding that imports were being, or were likely to be,
dumped).

[5]San Vicente was not a party to the 1996 Suspension Agreement.  *See* Fresh Tomatoes From
Mexico, 61 Fed. Reg. 56,618 (Dep't Commerce Nov. 1, 1996) (suspension of antidumping
investigation);  Fresh Tomatoes From Mexico, 61 Fed. Reg. 58,217 (ITC Nov. 13, 1996) (suspension
of antidumping investigation).

[6]For a more detailed discussion of the legislative history, requirements, and actual use of the
suspension agreement statute, *see generally* Bethlehem Steel Corp. v. United States, 25 CIT 519,
521-23, 146 F. Supp. 2d 927, 930-32 (2001).

[7]*See* Notice of Initiation of Five-Year Review,  66 Fed. Reg. 49,926 (Dep't Commerce Oct.
1, 2001) (initiation of sunset review); Fresh Tomatoes from Mexico, 66 Fed. Reg. 49,975 (ITC Oct.
1, 2001) (initiation of sunset review); 19 U.S.C. § 1675(c).

Articles 11.2 and 11.3 of the WTO Antidumping Agreement require that antidumping
measures – including suspension agreements, as well as antidumping orders – be reviewed at least
every five years, to determine whether the measures should be terminated ("sunsetted").  Where the

reviews were ongoing, Mexican tomato producers and exporters accounting for a large percentage of U.S. imports gave notice of their intent to withdraw from the 1996 Suspension Agreement. Because the suspension agreement no longer covered "substantially all of the imports," Commerce was forced to terminate it, effective July 30, 2002.[8]

The termination of the 1996 Suspension Agreement led perforce to the agencies' termination of their sunset reviews (since, as Commerce noted, "there [was] no longer a suspended investigation for which to perform a sunset review"), and to the resumption of the agencies' antidumping investigations initiated some six years earlier.[9] However, those investigations were soon halted once again, by a new suspension agreement – the 2002 Suspension Agreement.[10]

_____

measure at issue is a suspension agreement, Commerce and the ITC use these "sunset" reviews to analyze whether termination of the suspended investigation "would be likely to lead to continuation or recurrence of dumping . . . and of material injury." 19 U.S.C. § 1675(c)(1). *See generally* Committee for Fairly Traded Venezuelan Cement v. United States, 372 F.2d 1284, 1286-87 (Fed. Cir. 2004).

[8]*See* Fresh Tomatoes From Mexico, 67 Fed. Reg. 50,858 (Dep't Commerce Aug. 6, 2002) (termination of suspension agreement, termination of sunset review, and resumption of antidumping investigation).

If Commerce determines that a suspension agreement has been violated or no longer meets the requirements of the statute, the agreement must be terminated. *See* 19 U.S.C. § 1673c(i); 19 C.F.R. § 351.208-09 (2002).

[9]*See* Fresh Tomatoes from Mexico, 67 Fed. Reg. 43,278 (Dep't Commerce June 27, 2002) (notice of intent to terminate suspension agreement, intent to terminate sunset review, and intent to resume antidumping investigation); Fresh Tomatoes From Mexico, 67 Fed. Reg. 50,858 (Dep't Commerce Aug. 6, 2002) (termination of suspension agreement, termination of sunset review, and resumption of antidumping investigation); Fresh Tomatoes from Mexico, 67 Fed. Reg. 53,361 (ITC Aug. 15, 2002) (termination of sunset review); Fresh Tomatoes from Mexico, 67 Fed. Reg. 56,854 (ITC Sept. 5, 2002) (resumption of antidumping investigation).

[10]*See* Fresh Tomatoes from Mexico, 67 Fed. Reg. 77,044 (Dep't Commerce Dec. 16, 2002) (suspension of antidumping investigation); Fresh Tomatoes from Mexico, 67 Fed. Reg. 78,815 (ITC

San Vicente requested that the antidumping investigations be continued, notwithstanding the

2002 Suspension Agreement; but its request was denied.[11]  It did not seek to appeal that denial.

Next, SVC asked the ITC to "reopen" its sunset review.  The ITC denied SVC's request.  SVC then

set its sights on Commerce, requesting that it reopen its sunset review.  That request, too, was

denied.  Commerce reiterated that it could not "conduct a sunset review of a non-existent suspension

agreement."[12]

_____

Dec. 26, 2002) (suspension of antidumping investigation).

        As with the 1996 Suspension Agreement, San Vicente also is not a party to this more recent
suspension agreement.  *See* San Vicente Camalu SPR de RI v. United States, No. 02-00811 (CIT
filed Dec. 17, 2002), Memorandum of Points and Authorities in Support of San Vicente Camalu's
Motion for Judgment on the Agency Record (May 19, 2003) at 7 n.22 (noting that San Vicente is not
a member of the associations that signed the 1996 and 2002 Suspension Agreements); Signatory List
- Suspension Agreement - Fresh Tomatoes from Mexico (available on Commerce's website).

        Indeed, San Vicente is challenging the validity of the 2002 Suspension Agreement, in a
companion case pending before the court.  *See* San Vicente Camalu SPR de RI v. United States, No.
02-00811 (CIT filed Dec. 17, 2002).

        [11]*See* Complaint ¶¶ 11-12.  *See also* San Vicente Camalu SPR de RI v. United States, No. 02-
00811 (CIT filed Dec. 17, 2002), Memorandum of Points and Authorities in Support of San Vicente
Camalu's Motion for Judgment on the Agency Record (May 19, 2003) at App. 15 (Letter from
Counsel to San Vicente, dated Jan. 3, 2003, requesting continuation of antidumping investigations
under 19 U.S.C. § 1673c(g)), App. 16 (Memorandum from Commerce to All Interested Parties, dated
Jan. 3, 2003, denying San Vicente's request because San Vicente did not "account for a significant
proportion of exports" as required for that relief under the statute).

        The statute provides for the continuation of antidumping investigations notwithstanding the
existence of a suspension agreement, where the continuation is requested by exporters accounting
for "a significant proportion of exports" to the United States.  *See* 19 U.S.C. § 1673c(g).  In addition,
some domestic parties may request the continuation of an investigation.  However, domestic
*importers* like Expo Fresh are not entitled to that relief.  *See* 19 U.S.C. §§ 1673c(g), 1677(9).

        [12]*See* Letter from Counsel to SVC, dated Feb. 10, 2003, requesting that the ITC reopen its
sunset review (Pub. Doc. No. 177,383); Letter from the ITC, dated Mar. 24, 2003,  denying SVC's
request, explaining that "[a]bsent initiation by [Commerce], the [ITC] has no authority to institute

On July 29, 2003 – approximately one year after the agencies terminated their sunset reviews – SVC commenced this action, challenging those terminations. In the alternative, SVC challenges the agencies' denials of its requests to reopen their sunset reviews. *See* Complaint ¶¶ 25-30 (Count I, challenging Commerce's termination of sunset review), ¶¶ 31-35 (Count II, challenging ITC's termination of sunset review), ¶¶ 36-41 (Count III, challenging Commerce's denial of SVC's request to reopen sunset review), ¶¶ 42-46 (Count IV, challenging ITC's denial of SVC's request to reopen sunset review).

## II. **Analysis**

Where a plaintiff's assertion of jurisdiction is challenged by a motion to dismiss pursuant to USCIT Rule 12(b)(1), the plaintiff bears the burden of proving the soundness of its jurisdictional allegations. *See* McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991); Elkem Metals Co. v. United States, 23 CIT 170, 175, 44 F. Supp. 2d 288, 292 (1999). Here, SVC's claim to jurisdiction under 28 U.S.C. § 1581(i)[13]

_____

the requested five-year review") (Pub. Doc. No. 179,568 ); Letter from Counsel to SVC, dated May 1, 2003, requesting that Commerce reopen its sunset review (Pub. Doc. No. 1926); Letter from Commerce, dated June 27, 2003, denying SVC's request (Pub. Doc. No. 1961).

[13]Pursuant to 28 U.S.C. § 1581:

(i)      In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)-(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for –

(1)      revenue from imports or tonnage;

(2)      tariffs, duties, fees, or other taxes on the importation of

turns on whether it could have availed itself of jurisdiction under some other provision of § 1581.

*See* JCM, Ltd. v. United States, 210 F.3d 1357, 1359 (Fed. Cir. 2000) (*quoting* Norcal/Crosetti

Foods, Inc. v. United States, 963 F.2d 356, 359 (Fed. Cir. 1992)) (jurisdiction lies under §1581(i)

only where there is no jurisdiction under any other subsection of § 1581, unless the remedy under

that other subsection would be "manifestly inadequate").[14] Commerce and the ITC maintain that the

court would have had jurisdiction to review the agencies' determinations under § 1581(c),[15] if SVC

had filed its challenge within 30 days of their publication.

    In a nutshell, SVC's argument is that jurisdiction under § 1581(c) could not lie, because –

---

        merchandise for reasons other than the raising of revenue;

(3)     embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or

(4)     administration and enforcement with respect to the matters referred to in paragraphs (1)-(3) of this subsection and subsections (a)-(h) of this section.

This subsection shall not confer jurisdiction over an antidumping or countervailing duty determination which is reviewable either by the Court of International Trade under [19 U.S.C. § 1516a(a)] or by a binational panel under article 1904 of the North American Free Trade Agreement or the United States-Canada Free-Trade Agreement and [19 U.S.C. § 1516a(g)].

[14]SVC's claim to jurisdiction under § 1581(i) is predicated entirely on its assertion that jurisdiction did not lie under § 1581(c) – or, for that matter, under any other subsection of § 1581. In particular, SVC has not alleged that a remedy under any other subsection of § 1581 would be "manifestly inadequate." *See* DOJ Brief at 10; ITC Brief at 5-6; ITC Reply Brief at 3, 8-9; SVC Response Brief at 8 (arguing only that jurisdiction under § 1581(c) is unavailable).

[15]Jurisdiction lies under § 1581(c) for "any civil action commenced under [19 U.S.C. § 1516a]." In turn, 19 U.S.C. § 1516a(a)(2)(B)(iii) provides for review of "[a] final determination . . ., by [Commerce] or the [ITC] under section 1675 of this title."

SVC contends – the contested agency actions did not constitute "final determinations" under the

statute, since the agencies never reached the ultimate findings on the merits that are made when a

sunset review is completed.  In short, SVC reasons:

> Section 1581(c) states that "[t]he Court of International Trade shall have exclusive
> jurisdiction of any civil action commenced under section 516A of the Tariff Act of
> 1930 [19 U.S.C. § 1516a]."  Among the actions that may be commenced pursuant to
> 19 U.S.C. § 1516a are "final determinations" by the [ITC] or [Commerce] made
> "under section 1675 of this title."  Subsection (c) of 19 U.S.C. § 1675 addresses five-
> year reviews, the type of review at issue in this action.  Therefore, for jurisdiction to
> exist in this case under 28 U.S.C. § 1581(c), there must be a "final determination"
> made pursuant to 19 U.S.C. § 1675(c).

SVC Response Brief at 1-2 (footnotes omitted).  Quoting the text of § 1675(c),[16] SVC further

contends that there is a "final determination" in a sunset review case only if Commerce makes a

finding as to whether "stopping the investigation will likely lead to dumping" and the ITC makes a

finding as to whether "stopping the investigation will likely lead to material injury."  SVC Response

Brief at 2 (first and second alterations in original) (footnote omitted).  SVC concludes:

> When Commerce ended its five-year review of the suspended antidumping
> investigation . . ., it did not "determine . . . whether . . . termination of the
> investigation suspended . . . would be likely to lead to the continuation or recurrence
> of dumping."  Similarly, when the [ITC] ended its five-year review, it did not
> "determine . . . whether . . . termination of the investigation suspended . . . would be
> likely to lead to continuation or recurrence . . . of material injury."  Therefore, neither
> agency made a "final determination" pursuant to 19 U.S.C. § 1675(c).  Since 28

---

[16]Section 1675(c) requires, in pertinent part, that every five years after notice of a suspension
agreement is published:

> [Commerce] and the [ITC] shall conduct a review to determine, in accordance with section
> 1675a of this title, whether . . . termination of the investigation suspended under section
> 1671c or 1673c of this title would be likely to lead to continuation or recurrence of dumping
> or a countervailable subsidy (as the case may be) and of material injury.

19 U.S.C. § 1675(c).

> U.S.C. § 1581(c) requires such a "final determination" before it vests jurisdiction in the Court, the agency actions challenged by SVC clearly cannot be reviewed under that section.

SVC Response Brief at 2-3 (all but first and fifth alterations in original) (footnotes omitted). However, SVC's strained argument ignores both the unambiguous finality of the agencies' determinations here, and the pertinent precedent.

The determinations by Commerce and the ITC terminating the sunset reviews were clearly the final and definitive actions in those proceedings. There was nothing whatsoever about the determinations that was in any way preliminary, interlocutory, interim, provisional, or temporary. They were *final determinations* terminating the sunset reviews, driven in turn by the termination of the 1996 Suspension Agreement. The statute provides for sunset reviews *only* where an antidumping order or a suspension agreement is in place. And, at the time, neither existed in this case. 19 U.S.C. § 1675(c); DOJ Reply Brief at 2-3; ITC Reply Brief at 3. Moreover, because the agencies' terminations were the final and definitive resolution of the sunset reviews and any issues presented therein, the agencies' determinations on termination were every bit as *final* as determinations on the merits of the ultimate substantive issues under 19 U.S.C. § 1675(c) would have been – and they were every bit as *reviewable* under 19 U.S.C. § 1516a and 28 U.S.C. § 1581(c), as well.

Even SVC does not contend that the agencies' termination determinations were in any way preliminary in nature. Nor does SVC explain how, had the sunset reviews continued, Commerce and the ITC could have logically and meaningfully completed the sunset review analysis required under § 1675(c), given that the focus of that analysis was the antidumping investigation as it was suspended under the terms of the 1996 Suspension Agreement – a suspension agreement that no

longer existed.[17]  *See generally* ITC Reply Brief at 4.

SVC's argument is also at odds with relevant judicial precedent.  Significantly, SVC cites no case law to support its theory that an agency decision terminating a sunset review does not constitute a "final determination" simply because that determination does not reach ultimate findings on the continuation or recurrence of dumping and material injury.  Indeed, existing authority is to the contrary.

For example, in disputes arising out of administrative reviews conducted under 19 U.S.C. § 1675(a), the courts have routinely reviewed cases pursuant to § 1581(c), even though such actions are not specifically identified in the applicable statute.  *See*, *e.g.*, GSA, S.r.l. v. United States, 23 CIT 920, 921, 77 F. Supp. 2d 1349, 1350 (1999) (invoking jurisdiction pursuant to 28 U.S.C. § 1581(c) in a challenge to a termination of an antidumping new shipper review); Windmill Int'l Pte., Ltd. v. United States, 26 CIT 221, 222, 193 F. Supp. 2d 1303, 1305 (2002) (finding jurisdiction pursuant to 28 U.S.C. § 1581(c) in a challenge to a rescission of an antidumping administrative review).  *See generally* DOJ Brief at 8-9; DOJ Reply Brief at 4-5.  Just as the termination at issue in GSA and the rescission at issue in Windmill both constituted "final determinations" under § 1675 that were properly reviewable under § 1581(c), so too the agencies' terminations here at issue constituted "final determinations" under § 1675 that were properly reviewable under § 1581(c).[18]

_____

[17]The notion of resuming the sunset review now is, if anything, even more absurd.  At the time the sunset review was terminated, the 1996 Suspension Agreement had only been terminated, and the antidumping investigation (once suspended) had been resumed.  But those events too have now been affirmatively superseded, by yet another suspension agreement – the 2002 Suspension Agreement – which SVC is challenging in a companion case.  *See* n.10, *supra*.

[18]SVC seeks in vain to distinguish GSA and Windmill from this case, emphasizing that sunset reviews under § 1675(c) are "mandatory," "initiated automatically . . . five years after a date

Similarly, in Tupy I, Commerce's decision not to revoke an antidumping order was held to

be a final determination reviewable under 19 U.S.C. § 1516a(a)(2)(B)(iii), even though that decision

did not reach the ultimate findings specified in the statute. Industria Fundicao Tupy v. Brown, 18

CIT 933, 940-41, 866 F. Supp. 565, 571-72 (1994) ("Tupy I"). Indeed, Tupy II expressly rejected

the argument that jurisdiction did not lie under 19 U.S.C. § 1516a and 28 U.S.C. § 1581(c) because

Commerce's decision not to revoke was not a "determination" specifically listed as an appealable

determination under § 1516a. Industria Fundicao Tupy v. Brown, 19 CIT 1266, 1269-71, 904 F.

Supp. 1398, 1400-02 (1995) ("Tupy II"). See ITC Reply Brief at 4-5.

SVC points to several cases that suggest that residual jurisdiction under § 1581(i) might lie

---

certain," in contrast to the "non-obligatory section 1675(a) reviews considered . . . in Windmill and GSA." See SVC Response Brief at 3 n.7, 5. But SVC's argument is a classic case of "a distinction without a difference." SVC has failed to explain why the means by which administrative proceedings are triggered (i.e., initiated automatically, pursuant to a statute vs. initiated at the request of an interested party) has any bearing on the "finality" of the agency determinations rendered in those proceedings. See ITC Reply Brief at 6; DOJ Reply Brief at 4-5.

Equally futile is SVC's attempt to dismiss GSA and Windmill on the grounds that they do not "address[] in detail issues of jurisdiction under 28 U.S.C. § 1581(c)." See SVC Response Brief at 5-6. Contrary to SVC's implication, the relative silence in GSA and Windmill actually speaks volumes about the self-evident nature of jurisdiction in those cases. And even if, as SVC hints, *the parties* in those cases gave little or no thought to jurisdiction, it is "always necessary that *the court* determine its [own] jurisdiction irrespective of what parties aver, or even agree among themselves." Brecoflex Co. v. United States, 23 CIT 84, 86, 44 F. Supp. 2d 225, 228 (1999) (emphasis added). *See generally* ITC Reply Brief at 6 n.13.

SVC's reliance on Jeumont Schneider Transformateurs v. United States, 18 CIT 647, 650 (1994), is similarly unavailing. SVC cites Jeumont for the (seemingly non-controversial) proposition that jurisdiction may lie under § 1581(i) if an action does not contest a "final determination" issued under § 1675. *See* SVC Response Brief at 3 & n.7. But Jeumont does not address the definition of a "final determination." Moreover, as discussed above, the agency actions here in fact constituted "final determinations." Jeumont is thus irrelevant. *See generally* ITC Reply Brief at 5-6.

if "'the 'legality' of the administrative proceeding is at issue.'" *See* SVC Response Brief at 8-9 (*quoting* Ad Hoc Comm. of Florida Producers of Gray Portland Cement v. United States, 22 CIT 902, 908, 25 F. Supp. 2d 352, 358 (1998)). But those cases are simply inapposite here. In this action, SVC is not challenging the legality of the sunset reviews. Rather, SVC contests the agencies' determinations terminating those reviews because the 1996 Suspension Agreement was no longer in effect. Indeed, for example, in Asociacion Colombiana de Exportadores de Flores v. United States, 13 CIT 584, 586-88, 717 F. Supp. 847, 850-51 (1989), *aff'd*, 903 F.2d 1555 (Fed. Cir. 1990), and Carnation Enterprises Pvt. Ltd. v. Dep't of Commerce, 13 CIT 604, 612, 719 F. Supp. 1084, 1091 (1989) – cases on which SVC relies – the claims of illegality were asserted before the proceedings had reached "final determinations." As a result, in both cases, the court held that § 1516a and § 1581(c) did not apply. *See generally* ITC Reply Brief at 5; DOJ Reply Brief at 5-6.

Certainly the cases that SVC cites do not stand for the proposition that (i) jurisdiction lies whenever a plaintiff (like SVC here) claims that a final determination in a proceeding is contrary to law. The standard of review in *all* cases under § 1516a is whether the agency determination at issue is contrary to law – *i.e.*, "not in accordance with law." *See* 19 U.S.C. §§ 1516a(b)(1)(A), (B)(i), and (B)(ii).

In sum, here, much like Tupy I, "pursuant to 19 U.S.C. § 1516a, plaintiffs had 30 days from the . . . publication date[s]" of the agencies' determinations – *i.e.*, 30 days from August 6, 2002 (for Commerce) and from August 15, 2002 (for the ITC) – to initiate an action contesting those determinations.  But, by the time SVC's Complaint was filed, those deadlines had long since passed.  "Having failed to [initiate any action], plaintiffs may not now resort to the residual jurisdiction of this court."  Tupy I, 18 CIT at 941, 866 F. Supp. at 572 (*quoted in* ITC Reply Brief at 7).[19]

---

[19]The jurisdictional basis for Counts III and IV of SVC's Complaint – which challenge the denial of its requests to reopen their sunset reviews – is no less flawed than that for Counts I and II, which challenge the terminations of those reviews.

SVC cannot invoke (i) jurisdiction – after failing to challenge the agencies' August 2002 determinations terminating the sunset reviews within 30 days of those determinations (as required to invoke jurisdiction under § 1516a and § 1581(c)) – simply by requesting that the agencies retract or reconsider their determinations. *See generally* ITC Reply Brief at 8.  Section 1581(i) was never intended to create new causes of action.  H.R. Rep. No. 96-1235, at 47 (1980).  Nor was it intended to supersede more specific jurisdictional provisions.  Koyo Seiko Co. v. United States, 13 CIT 461, 463, 715 F. Supp. 1097, 1099 (1989).  Similarly,

> where Congress has prescribed in great detail a particular track for a claimant to follow, in administrative or judicial proceedings, and particularly where the claim is against the United States . . ., the remedy will be construed as exclusive without a specific statement to that effect.  The claimant will not be allowed to sail past carefully constructed limitations simply by invoking other and more general legislation. This is so even when the general legislation might have been construed to cover the case if the specific legislation had not been enacted.

Nat'l Corn Growers Ass'n v. Baker, 840 F.2d 1547, 1558 (Fed. Cir. 1988).  SVC thus cannot make an "end run" around § 1581(c) and secure (i) jurisdiction simply by using the procedural mechanism of a request to reopen.

### III.  Conclusion

For all the reasons set forth above, residual jurisdiction under 28 U.S.C. § 1581(i) will not lie in this case; and SVC failed to timely invoke jurisdiction under 28 U.S.C. § 1581(c).  The motions to dismiss filed on behalf of Commerce and the ITC are therefore granted, and this action is dismissed.

Judgment will enter accordingly.

_____/s/_____
Delissa A. Ridgway, Judge

Decided:    April 18, 2005
              New York, New York

ERRATA


San Vicente Camalu SPR de RI and Expo Fresh, LLC v. United States, Court No. 03-00517, Slip Op. 05-50, dated April 18, 2005.


Page 4:     In footnote 7, replace "372 F.2d" with "372 F.3d".

Page 8:     In line 12, after "SVC Response Brief at 1-2", and before "(footnotes omitted)", insert "(first and second alterations in original)".

Page 8:     In line 16, after "Brief at 2", and before "(footnote omitted)", delete "(first and second alterations in original)".

Page 8:     In footnote 16, delete "every".


April 22, 2005